IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
JAMES H. TENNANT,              )
                               )
          Plaintiff,           )      8:04CV100
                               )
     v.                        )
                               )
OMAHA PUBLIC POWER DISTRICT,   )      MEMORANDUM OPINION
                               )
          Defendant.           )
_____)
```

This matter is before the Court on defendant's motion for summary judgment (Filing No. 28), filed on April 15, 2005. Plaintiff James H. Tennant ("Tennant") contends that the Omaha Public Power District ("OPPD") failed to promote him because of his age and retaliated against him for filing charges of discrimination. Tennant asserts his claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)("ADEA") and the Nebraska Act Prohibiting Unjust Discrimination in Employment Due to Age ("NUDEA"), Neb. Rev. Stat. § 48-1001, *et seq.* and his claim for retaliation for filing charges with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC") under 42 U.S.C. § 2000e *et seq.*, 29 U.S.C. § 623(d) and Neb. Rev. Stat. § 48-1004.  In addition, Tennant also asserts a claim for breach of contract.  The Court has reviewed the motion, briefs, evidentiary submissions, and the applicable law and finds that defendant's motion should be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *McAllister v. Transamerica Occidental Life Ins. Co.,* 325 F.3d 997, 999 (8th Cir. 2003). When making this determination, the Court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, the Court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505.(1986).

The Court must "look to the substantive law to determine whether an element is essential to a case, and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson,* 477 U.S. at 248). Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of his claim. *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986). In addition, Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A party seeking summary judgment bears the responsibility of informing the Court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Tenbarge v. Ames Taping Tool Sys., Inc*., 128 F.3d 656, 657 (8th Cir. 1997)(quoting *Celotex,* 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). In the face of a properly supported motion, "the burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir. 1997)(quoting Fed. R. Civ. P. 56(e)).

Summary judgment motions must be carefully used in an employment discrimination case, and the Court should not make

credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097 (2000); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997). However, summary judgment is appropriate when there is no factual dispute on an essential element of a claim. *Smith* 109 F.3d at 1267-68.

## II.   BACKGROUND

The plaintiff, James H. Tennant ("Tennant"), was born in 1946. Tennant was employed by the defendant, Omaha Public Power District ("OPPD"), from August of 1990 until his termination on August 25, 2004. Tennant's positions with OPPD were covered by a collective bargaining agreement ("CBA") between OPPD and Local 1483 of the International Brotherhood of Electrical Workers. During his employment with OPPD, Tennant was given regular performance reviews. He consistently received overall ratings of "Meets Expectations," the middle of three ratings,[1] but, since March, 1992, Tennant has regularly received the lowest possible rating of "Needs Improvement" for several individual rating categories including "job duties/ accountabilities," "job knowledge," "job productivity," "productivity improvement," and "work quality." Because of continued performance issues, Tennant signed and was placed on

---

[1] Prior to Tennant's 2003 performance review, OPPD changed its rating scale to a five grade scale. Under the new scale, the best grade was "Far Exceeds Expectations," the second highest grade was "Above Expectations," the middle grade was "Meets Expectations," the fourth grade was "Below Expectations" and the lowest grade remained "Needs Improvement."

formal performance improvement plans in September, 1996, December, 1997, August, 2002, and January, 2004.  In addition, Tennant was disciplined for sleeping on the job on November 13, 2003, with a two-day suspension; and again on August 17, 2004, when he was sent home and then terminated on August 25, 2004 (See Exhibit 24).  Tennant also received a formal written disciplinary action in December, 2003, for making inappropriate comments to a female employee.

Tennant applied for promotion to the position of Supervisor, Load Research and Analysis on February 19, 2002. Applications for this position were screened by the human resources department which identified four candidates for interviews for this position.  Tennant was one of the four candidates selected for an interview.  All of the interviews were conducted by a three-person selection committee consisting of Jay Anderson, the hiring manager; Konstantine Boosalis, manager of business strategies; and Sheila Love, the human resources representative who screened the initial applications.  Each member of the selection committee independently scored each candidate.  These three individual scores were combined to give a final score to each candidate.  No evidence was presented as to how each member scored the various candidates.

The highest scoring candidate was Michael Taron, the only external candidate.  Taron scored 181.25 points.  Paul Cullen ("Cullen") was the second highest ranked candidate with a score of 169.25 points.  Shari Garcia was the third ranked

candidate with a score of 159 points.  Tennant was the lowest scoring candidate, with a score of 145 points.

The selection committee determined that Taron, the highest scoring candidate, was overqualified for the position and thus was unlikely to remain in the position for very long.  Therefore, OPPD offered the position to Cullen, the highest scoring internal candidate.  Cullen accepted.  At age forty-four (44), Cullen is also a member of the ADEA's protected class, but is eleven (11) years younger than Tennant.

Following his unsuccessful interview, Tennant filed his first discrimination charge with the NEOC and the EEOC on June 3, 2002, alleging that OPPD discriminated against him because of his age when Cullen was selected over him for the Supervisor, Load Research and Analysis position.  Tennant admits that neither Boosalis or Love discriminated against him in the selection process for this position.  EEOC issued Tennant a "Right-to-Sue" letter dated December 10, 2003.

Cullen, as Tennant's new supervisor, conducted his first evaluation of Tennant on August 8, 2002.  Tennant received an overall rating of "Needs Improvement" with individual ratings of "Needs Improvement" for work quality, work quantity, customer service and other performance areas.  As a result, Tennant was placed on a performance improvement plan.

On September 27, 2002, Tennant filed his second discrimination complaint with NEOC and EEOC, alleging retaliation.  Tennant asserted that his low performance rating

was given in retaliation for his first discrimination complaint. He also asserted that he was forced to see his own physician regarding prescription medications he was taking. On December 10, 2003, the EEOC issued Tennant a "Right-to-Sue" letter related to both of his complaints and he filed his complaint instituting this action.

Prior to filing this suit, Tennant filed his third discrimination complaint with the EEOC and NEOC on February 13, 2004, alleging gender, age and disability discrimination and retaliation. Tennant has subsequently agreed that he is not pursuing his claims of gender and disability discrimination. No "Right-to-Sue" letter has been issued regarding this third complaint.

Defendant claims that on August 17, 2004, Tennant was observed sleeping on the job, and a decision was made to terminate his employment. Tennant was terminated on August 25, 2004. Subsequently, his position has not been filled. On November 30, 2004, Tennant filed his amended complaint (Filing No. 21). OPPD filed its answer to the amended complaint (Filing No. 22) on December 6, 2004, and its motion for summary judgment (Filing No. 28) on April 15, 2005.

### III.  DISCUSSION

A.   Age Discrimination

Tennant alleges violation of the ADEA and the NUDEA. The Nebraska Supreme Court has stated that NUDEA decisions are interpreted in the same manner as ADEA decisions, so that the

ADEA analysis applies equally to Tennant's NUDEA claim. *Billingsley v. BFM Liquor Mgmt., Inc.*, 264 Neb. 56, 67, 645 N.W.2d 791, 801 (2003). The ADEA prohibits discrimination on account of age against anyone in the protected age group. 29 U.S.C. §§ 623(a)(1), 631(a). The ADEA states in part that "It shall be an unlawful employment practice for an employer [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish an ADEA claim, Tennant must show that OPPD intentionally discriminated against him because of his age. *Ziegler v. Beverly Enterprises-Minnesota, Inc.*, 133 F.3d 671, 675 (8th Cir. 1998).

Tennant's claim relies on indirect or circumstantial evidence. Without direct evidence, ADEA claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611 (8th Cir. 2003)(*citing Mayer v. Nextel West Corp.*, 318 F.3d 803, 806-07 (8th Cir. 2003). Under this framework, the plaintiff must first present a prima facie case of age discrimination which shifts the burden to the defendant to offer a legitimate nondiscriminatory reason for the adverse employment action. *Mayer*, 318 F.3d at 807. Once the defendant offers a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual. *Id. See also*

*Allen v. City of Pocahontas, Ark.*, 340 F.3d 551, 557 (8th Cir. 2003). The burden of persuasion remains with the plaintiff throughout. *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir. 2001).

To withstand a motion for summary judgment, the plaintiff must first establish a prima facie case. *Girten v. McRentals, Inc.*, 337 F.3d 979, 981 (8th Cir. 2003). To establish a prima facie case, the plaintiff must show: (1) he is age forty or older; (2) he met the applicable job qualifications; (3) he was rejected; and (4) the employer filled the position with an "individual sufficiently younger to permit the inference of age discrimination." *Hammer v. Ashcroft*, 383 F.3d 722, 726 (8th Cir. 2004)(*citing Schiltz v. Burlington N.R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997)). While Tennant establishes the first three requirements of his prima facie case, the fourth requirement is not clearly established. It is unclear in the Eighth Circuit if age discrimination can be inferred because both Tennant and Cullen are over forty and thus are both members of the protected class. Furthermore, the age difference is only eleven years. *Girten*, 337 F.3d at 982(*comparing Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412-13 (8th Cir. 1997)(holding that a five-year age disparity is insufficient to infer discrimination) with *Keathley v. Ameritech Corp*., 187 F.3d 915 (8th Cir. 1999)(holding that a fourteen-year age difference is sufficient to infer age discrimination)). For purposes of summary judgment, this Court will assume that Tennant has established his prima facie case.

Even if a plaintiff succeeds in making out a prima facie case, only a rebuttable presumption of unlawful age discrimination is created. *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 807 (8th Cir. 2003).

### Pretext

Assuming the prima facie case is established, the burden shifts to OPPD to provide legitimate nondiscriminatory reasons for its employment decision. *Yates*, 267 F.3d at 799; *Dammen v. Unimed Med. Ctr.*, 236 F.3d 978, 980 (8th Cir. 2001). OPPD has offered evidence that the three-person selection committee used a highly structured interview process in which each of the three interviewers independently scored and ranked each candidate. These scores are then combined to produce a cumulative score for each candidate.

Tennant asserts that the "behavioral interview process used by the defendant is discriminatory," but provides no evidence to support this statement. Evidence, not contentions, avoid summary judgment. *Mayer v. Nextel West Corp.*, 318 F.3d 803, 809 (8th Cir. 2003). Thus, Tennant's assertion is insufficient to justify finding OPPD's highly structured interview process discriminatory.

In the present case, Tennant's score ranked last among the four candidates interviewed. Paul Cullen, the successful candidate, was the second highest ranked candidate. Cullen was selected over the highest scoring candidate based on the selection committee's belief that the top scorer was

overqualified for the position and therefore was unlikely to stay in the position for long. Where Tennant ranked last of the four candidates under a structured selection process, OPPD successfully met its burden of providing legitimate nondiscriminatory reasons for its employment decision.

Once OPPD has met its burden of production, Tennant is required to offer proof that the proffered reason is not the true reason he was not selected for the job position. *Yates,* 267 F.3d at 799; *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 955 (8th Cir. 2001). Tennant only points to the fact that Cullen was offered the job when he was not the highest rated candidate, along with his personal belief that his age was a factor in his not being offered the position. No evidence has been offered to support this perception. Tennant's perceptions, without more, are insufficient to meet his burden in this regard.

Having thoroughly reviewed the record, the Court concludes that Tennant has failed to meet his burden of showing pretext. Thus, Tennant has failed to make the prima facie case for his age discrimination claims under the ADEA and NUDEA, and OPPD's motion for summary judgment as to the age discrimination claim will be granted.

B.  Retaliation

In order to establish a prima facie case of retaliation under Title VII, an employee must show: (1) that the employee engaged in an activity protected by the statute; (2) that adverse employment action occurred; and (3) that a causal connection

-11-

existed between the two.  *Sweeney v. City of Ladue*, 25 F.3d 702, 703 (8th Cir. 1994).  It is undisputed that Tennant's filing of discrimination charges with the NEOC and the EEOC constitutes protected activity.  Thus, only the other two elements of the prima facie case are at issue.

### Adverse Activity

Tennant asserts the following actions as adverse employment actions: (1) a job evaluation where his overall performance was rated "Needs Improvement;" (2) placement on a performance improvement plan; (3) having the performance improvement plan time period extended; and (4) his ultimate termination.

Only adverse actions which rise to the level of an ultimate employment decision are actionable under Title VII. *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). Such adverse employment actions are exhibited by a material employment disadvantage such as a change in salary, benefits or responsibilities.  *Lacroix v. Sears Roebuck & Co.*, 240 F.3d 688, 691 (8th Cir. 2001).  Negative performance reviews, without more, are not adverse employment actions.  *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001).

The fact Tennant was given a low performance evaluation which led to his placement on a performance improvement plan that was extended beyond the initial time period does not rise to the level of an "ultimate employment decision" so as to be actionable under Title VII.  Tennant's ultimate termination, however,

-12-

constitutes an adverse employment action. Therefore, Tennant's ultimate termination must be causally connected to his filing of discrimination charges to constitute a prima facie case of retaliation.

### Causal Connection

While Tennant's termination constitutes an actionable activity, Tennant must still establish that his termination is causally connected to his filing of discrimination charges. Tennant fails to provide any evidence to support any causal connection between his repeated discrimination charges and his eventual termination.

The Eighth Circuit has held that no causal connection exists when there is evidence of performance issues both before and after the filing of complaints. *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004). In *Erenberg*, the Court found that deficiencies in the plaintiff's job performance were identified, brought to her attention and resulted in disciplinary actions both before and after her complaint. *Id.* Similarly, Tennant has received the lowest possible rating of "needs improvement" for several individual rating categories including "job duties/accountabilities," "job knowledge," "job productivity," "productivity improvement," and "work quality" regularly since March, 1992. In addition, Tennant was disciplined twice for sleeping on the job. First, on November 13, 2003, and again on August 17, 2004. Thus, as in *Erenberg*, Tennant is unable to demonstrate a causal connection between his

termination and his filing of complaints because evidence exists of performance issues occurring both before and after Tennant filed his complaints.

Nor can plaintiff rely on temporal proximity of the adverse employment action to plaintiff's latest employment discrimination complaint to permit a finding of causal connection. Temporal proximity by itself, is generally insufficient to establish a causal connection. *Bradley v. Widnall*, 232 F.3d 626, 633 (8th Cir. 2000). The closest temporal proximity to Tennant's August 25, 2004, termination is his February 13, 2004, discrimination charge, a gap of over six months.

The length of time between protected activity and adverse action is important. The Supreme Court has said: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001)(per curiam)(internal quotation marks omitted). The Eighth Circuit Court of Appeals has held that "the interval of two months between the complaint and [plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link." *Kipp v. Mo. Highway &*

*Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002).  For these reasons, the Court finds that plaintiff has failed to meet his burden of establishing a causal connection between his termination and his filing of discrimination charges with the EEOC and NEOC.  Therefore, OPPD's motion for summary judgment as to Tennant's retaliation claim will be granted.

C.   Breach of Contract

<u>OPPD Employee Handbook Implied Contract Claim</u>

Tennant alleges that the OPPD Employee Handbook ("Handbook") constitutes an implied contract.  Specifically, Tennant's amended complaint references the "Equal Employment Opportunity" section of the Handbook which provides that OPPD policies and procedures are administered in a manner so that discrimination, in a variety of ways including age, is avoided.  Tennant alleges that he reasonably relied on representations in the Handbook, and that OPPD breached its implied agreement in taking the actions that he alleges constitute age discrimination.

In order to make out a claim of wrongful discharge based upon the Handbook, Tennant must show that he received an offer, definite in form, which was communicated to him and for which consideration was given.  *Overmier v. Parks*, 242 Neb. 458, 462, 495 N.W.2d 620, 623 (1993).  In *Foreman v. AS Mid-America, Inc.,* 255 Neb. 323, 343, 586 N.W.2d 290, 304 (1998), the Nebraska Supreme Court held that generalized language in an employee handbook was insufficient to "rise to a level of an offer of employment."  Similarly, the generalized language in the OPPD

handbook is insufficient to constitute an offer, and therefore is insufficient to support a breach of an implied contract claim. Therefore, Tennant's breach of an implied contract claim based upon language in the Handbook fails and OPPD's motion for summary judgment on this claim is granted.

D.   Award of Attorneys' Fees

Having granted OPPD's motion for summary judgment on all of Tennant's claims, the Court next considers OPPD's request for reasonable costs and attorneys' fees as the prevailing party. ADEA does not provide attorney's fees to a prevailing defendant. *Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 962 (8th Cir. 1978).  The Court may award attorney's fees to a prevailing defendant under the bad faith exception to the American Rule. *Id*.  Under the bad faith exception, a trial court may award attorney's fees to a prevailing party when it finds "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Actors' Equity Ass'n v. American Dinner Theatre Inst.*, 802 F.2d 1038, 1041 (8th Cir. 1986)(*quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975)).  The Court does not find that Tennant acted vexatiously or in bad faith and therefore denies an award of attorneys' fees to OPPD.

### IV.   CONCLUSION

Tennant has failed to carry the burden to prove his claims of age discrimination, retaliation and breach of contract. Accordingly, the Court finds that summary judgment is

appropriate, and the defendant's motion for summary judgment will be granted.  Defendant's request for attorney's fees will be denied.  The Court will deny as moot defendant's motion to strike (Filing No. 37).  A separate order will be entered in accordance with this memorandum opinion.

DATED this 22nd day of July, 2005.

BY THE COURT:

/s/ Lyle E. Strom
_____
    LYLE E. STROM, Senior Judge
    United States District Court